DETROIT MEDICAL CENTER v TITAN INSURANCE COMPANY

Docket No. 283815. Submitted March 10, 2009, at Lansing. Decided
    March 31, 2009. Approved for publication June 16, 2009, at 9:20
    a.m.

The Detroit Medical Center brought an action in the Wayne Circuit
    Court against Titan Insurance Company, seeking no-fault personal
    protection insurance benefits for the cost of medical care provided
    to Maria Jimenez after she was injured in an automobile accident.
    The defendant, who had been assigned the claim because the car
    Jimenez was driving was uninsured, moved for summary disposi-
    tion, arguing that she was an owner of the uninsured car for
    purposes of the no-fault act, MCL 500.3101, and, as such, was not
    entitled to personal protection insurance benefits under MCL
    500.3113. The court, Robert L. Ziolkowski, J., denied the motion,
    ruling that Jimenez was not an owner of the car. The court also
    denied an award of attorney fees to the plaintiff, ruling that the
    benefits were not overdue and that the defendant did not unrea-
    sonably refuse to pay the claim or unreasonably delay in making
    proper payment. The plaintiff appealed, and the defendant cross-
    appealed.

The Court of Appeals held:

1. MCL 500.3101(2)(h)(i) defines "owner" as "[a] person rent-
    ing a motor vehicle or having the use thereof, under a lease or
    otherwise, for a period that is greater than 30 days." "[H]aving the
    use" of a motor vehicle means using the vehicle in ways that
    comport with concepts of ownership. Ownership follows from
    proprietary or possessory usage, as opposed to merely incidental
    usage under the direction or with the permission of another. In
    this case, Jimenez did not have the use of the vehicle for a period
    that was greater than 30 days. There was no transfer of a right to
    use, but simply an agreement to periodically lend. The permission
    was not for a continuous 30 days, but sporadic. Jimenez did not
    have regular use of the car, did not believe that she had any right
    of ownership, and did not have unfettered use. The trial court
    correctly ruled that Jimenez was not an owner of the car for
    purposes of the no-fault act.

2. The trial court did not abuse its discretion by refusing to award attorney fees to the plaintiff. Benefits were not overdue and the defendant did not unreasonably refuse to pay the claim or unreasonably delay in making proper payment in light of a legitimate question concerning whether Jimenez was an owner of the car.

Affirmed.

*Miller & Tischler, P.C.* (by *Milea M. Vislosky*), for the plaintiff.

*Law Offices of Ronald M. Sangster, PLLC* (by *Daniel T. Rizzo*), for the defendant.

Before: WILDER, P.J., and METER and SERVITTO, JJ.

PER CURIAM. In this first-party case under the no-fault act, MCL 500.3101 *et seq.*, defendant appeals as of right an order denying its motion for summary disposition and granting plaintiff's counter-motion for summary disposition. Plaintiff cross-appeals, challenging the denial of an award of attorney fees. We affirm. This appeal has been decided without oral argument pursuant to MCR 7.214(E).

Plaintiff provided medical services to Maria Jimenez after she was injured in an automobile accident. Jimenez was driving an uninsured vehicle. Defendant, who was assigned the claim by the Assigned Claims Facility, maintained that Jimenez was an "owner" of the vehicle, and that plaintiff was therefore not entitled to recover for Jimenez's medical expenses. See MCL 500.3113. MCL 500.3101(2)(h)(i) defines the term "owner" for purposes of the no-fault act to include "[a] person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days."

Taking facts discerned from interviews of Jimenez and Jose Gonzalez in the light most favorable to defendant, it was established that Gonzalez had title to the

car and canceled the insurance; he was the father of Jimenez's two children and may have lived with her; the car was kept at Jimenez's residence; she used the vehicle, primarily for grocery shopping, approximately seven times over the course of about a month; she had to get permission and the keys from Gonzalez to use the vehicle, although permission may never have been denied; she fueled the car, but Gonzalez was otherwise responsible for maintenance; and he had stopped using the vehicle, as he had use of another. In granting summary disposition to plaintiff, the trial court determined that the permissive use and lack of keys precluded any finding of a right of ownership.

We review the ruling on the motion for summary disposition de novo. *Tillman v Great Lakes Truck Ctr, Inc*, 277 Mich App 47, 48; 742 NW2d 622 (2007).

In *Twichel v MIC Gen Ins Corp*, 469 Mich 524; 676 NW2d 616 (2004), the decedent had purchased the uninsured vehicle five days before the accident, but had not paid for it in full or acquired title. However, the *Twichel* Court concluded that the decedent was an owner of the vehicle because, by virtue of the terms of the agreement with the seller, he had taken possession with the intent to use it for more than 30 days even though he had only used it for five days.

In *Ardt v Titan Ins Co*, 233 Mich App 685, 690-691; 593 NW2d 215 (1999), this Court stated:

> [W]e hold that "having the use" of a motor vehicle for purposes of defining "owner," MCL 500.3101(2)(g)(i); MSA 24.13101(2)(g)(i), means using the vehicle in ways that comport with concepts of ownership. The provision does not equate ownership with any and all uses for thirty days, but rather equates ownership with "having the use" of a vehicle for that period. Further, we observe that the phrase "having the use thereof" appears in tandem with references to renting or leasing. These indications imply that

*ownership follows from proprietary or possessory usage, as opposed to merely incidental usage under the direction or with the permission of another.* [Emphasis added.]

In *Ardt*, the driver, who lived with his mother, was using his mother's uninsured vehicle at the time of the accident. A witness said that the driver regularly used the car for more than 30 days, whereas his mother said he used it only a few times, usually for minor purposes like having it washed. The *Ardt* Court concluded that conflicting evidence of sporadic versus regular, unsupervised usage created a genuine issue of material fact for resolution at trial.

In *Chop v Zielinski*, 244 Mich App 677; 624 NW2d 539 (2001), the injured person and driver was the ex-wife of the titleholder. She believed, albeit mistakenly, that she was to be awarded the car in the divorce, kept the car at her apartment complex, and used it daily and exclusively for work and errands for at least six weeks. The *Chop* Court rejected her argument that she could not be the owner because she did not hold title and was merely a borrower. Citing *Ardt*, the *Chop* Court held that "[p]laintiff's use of the car in such a manner was possessory use that comports with the concepts of ownership." *Id.* at 681.

Here, Jimenez did not "hav[e] the use" of the vehicle "for a period that is greater than 30 days." There was no transfer of a right of use, but simply an agreement to periodically lend. The permission was not for a continuous 30 days, but sporadic. Similar to the vehicle in *Chop*, the car was kept at Jimenez's residence. Moreover, she clearly had a significant relationship with Gonzalez such that permission to use the vehicle apparently was never denied. However, unlike the driver in *Ardt*, there was no evidence that Jimenez had "regular" use of the car. Also, contrary to the plaintiff in *Chop*,

Jimenez did not believe that she had any right of ownership and she did not have unfettered use. She had to ask permission and had to be given the keys. While there are facts in common with *Chop* and *Ardt*, these facts, by themselves, do not establish ownership. The need for permission distinguishes this case from *Chop* and *Twichel*, and the lack of any evidence of regular use distinguishes this case from *Ardt*. Accordingly, the trial court did not err when it concluded that Jimenez was not an owner of Gonzalez's vehicle.

Regarding attorney fees, MCL 500.3148(1) provides:

> An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are *overdue*. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, *if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.* [Emphasis added.]

In *Moore v Secura Ins*, 482 Mich 507, 519; 759 NW2d 833 (2008), our Supreme Court stated that this statute did not permit "the recovery of attorney fees for actions in which a court awarded plaintiff benefits that were reasonably in dispute, or, stated slightly differently, benefits not yet overdue." The Court concluded that "whether a claimant's benefits qualify as overdue and whether an insurer unreasonably refused to pay or unreasonably delayed in making payment determine if a claimant's attorney may receive attorney fees." *Id.* at 511. The Supreme Court further determined that what constitutes reasonableness is a question of law that is reviewed de novo, but whether the defendant's denial of benefits was reasonable under the particular facts of the case is a question of fact that is reviewed for clear error. *Id.* at 516. In addition, we review a trial court's award of attorney fees and costs for an abuse of discretion. *Id.*

In denying attorney fees in this case, the trial court concluded that the initial denial of benefits was not unreasonable given some indicia of ownership, and that the question of statutory construction was legitimate. We find no clear error in this determination. Although we have concluded that Jimenez's need for permission to use the vehicle and her sporadic use thereof contraindicated ownership, facts in *Ardt* and *Chop* gave rise to a justifiable contrary argument. Thus, the benefits were *reasonably in dispute* and therefore not overdue. Accordingly, the trial court properly declined to award attorney fees to plaintiff.

Affirmed.