# STATE OF MICHIGAN

# COURT OF APPEALS

TIFFANY ADAMS,

        Plaintiff-Appellee,

v

JAMES EDWARD CURTIS and DUNNING
MOTORS,

        Defendants-Appellants.

UNPUBLISHED
April 11, 2017

No. 330999
Livingston Circuit Court
LC No. 15-028559-NI

Before: BORRELLO, P.J., and WILDER and SWARTZLE, JJ.

PER CURIAM.

Under Michigan's no-fault regime, a motor vehicle can have a title owner as well as a "constructive owner." The latter form of ownership arises from a person's "*proprietary* or *possessory* usage" of the motor vehicle, as opposed to mere "incidental usage under the direction or with the permission of another." *Ardt v Titan Ins Co*, 233 Mich App 685, 691; 593 NW2d 215 (1999). Here, we face the question of whether a grandfather's use of his granddaughter's car was sufficiently proprietary or possessory to meet the usage threshold for constructive ownership. Finding a genuine issue of material fact on this question, we vacate the trial court's judgment and remand for further proceedings.

## I. BACKGROUND

Plaintiff alleged that defendant James Edward Curtis, while operating a vehicle owned by defendant Dunning Motors, was intoxicated and caused a head-on collision with a 1999 Ford Taurus driven by plaintiff and titled in her name. Curtis subsequently pleaded nolo contendere to operating while intoxicated causing serious injury and was sentenced to a prison term of one year, eight months to five years. For her part, plaintiff suffered significant injuries, including a traumatic brain injury and several fractured bones and lacerations. Plaintiff's vehicle was insured by Home-Owners Insurance Company (Home-Owners), and the insurer has paid personal injury protection (PIP) benefits in excess of $550,000.

Plaintiff sued defendants for noneconomic damages under MCL 500.3135. A party is barred from recovering any damages under that provision if the party was operating her own

-1-

vehicle at the time of the injury and that vehicle was not properly insured under Michigan's no-fault system. MCL 500.3135(2)(c). To be properly insured, Michigan law requires, among other things, that a motor vehicle be insured by an owner, and plaintiff admittedly did not insure her 1999 Ford Taurus—her grandfather (Eugene Johnson) did.[1] Specifically, Johnson insured the 1999 Ford Taurus and four other vehicles he owned through Home-Owners. On the rated-driver list for the Taurus, the policy listed only Johnson and his wife, Nancy. The declarations sheet stated: "Automobile driven to work or school 3 miles or less by a 71 year old operator." Accordingly, defendants moved for summary disposition, arguing that the 1999 Ford Taurus was not insured by an owner as required by MCL 500.3101(1) and, as a result, plaintiff was barred from recovering noneconomic damages.

On the question of ownership, plaintiff conceded that her grandfather was not titled on the vehicle. Plaintiff argued, instead, that Johnson was a constructive owner of the vehicle. At the time of the accident, plaintiff was living with her grandparents and had done so for the past ten or so years. Johnson helped plaintiff purchase the 1999 Ford Taurus by inspecting it and making sure it was a worthwhile investment. Johnson testified that he did not provide his granddaughter with any funds to purchase the vehicle.[2] He did, however, have his own set of keys to the vehicle, and he drove it "every couple weeks" to make sure that it was still operating properly. He testified that he did not ask his granddaughter for permission to drive the vehicle, but that he drove it when she was not using it for work. He also explained that he performed and paid for all of the vehicle's maintenance, including washing and fueling the vehicle.

Plaintiff argued below that, taken together, these statements confirmed that Johnson was a constructive owner of the 1999 Ford Taurus. Defendants disagreed, maintaining that these statements amounted to, at best, episodic usage that failed to reach proprietary or possessive usage. The trial court sided with plaintiff and granted summary disposition in her favor under MCR 2.116(I). Defendants now appeal by leave granted.[3]

---

[1] It appears from the record that Johnson was married to plaintiff's grandmother, but that he is not plaintiff's biological or adoptive grandfather. Because plaintiff refers to Johnson as her "grandfather" without qualification in her brief on appeal, we will do the same.

[2] Johnson countered this testimony in an affidavit filed in response to defendants' summary disposition motion. It is well settled that a party "may not create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition." *Downer v Detroit Receiving Hosp*, 191 Mich App 232, 234; 477 NW2d 146 (1991). Accordingly, for purposes of this appeal, Johnson's contrary statement regarding helping to pay for the 1999 Ford Taurus is ignored.

[3] *Adams v Curtis*, unpublished order of the Court of Appeals, entered April 12, 2016 (Docket No. 330999).

## II. ANALYSIS

"We review de novo a trial court's decision regarding a motion for summary disposition to determine if the moving party is entitled to judgment as a matter of law." *Bernardoni v City of Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016). Summary disposition should be granted if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). In rendering our decision, we review the evidence in the light most favorable to the nonmoving party. *Hastings Mut Ins Co v Safety King, Inc.*, 286 Mich App 287, 291; 778 NW2d 275 (2009). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

*Noneconomic Damages and Ownership.* Under Michigan's no-fault insurance regime, a person may be liable in an action arising out of a motor-vehicle accident if the injured person "suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). But, the injured person is not entitled to damages if she was operating a vehicle that was not properly insured at the time the injury occurred. MCL 500.3135(2)(c).

To insure a vehicle properly, an owner of the vehicle must maintain the insurance on that vehicle. MCL 500.3101(1). If a vehicle is not insured by an owner (titled or constructive), then the vehicle cannot be properly insured under Michigan law. Thus, it is not sufficient for a non-owner to insure a vehicle, at least when noneconomic damages or other benefits are sought. See *Barnes v Farmers Ins Exch*, 308 Mich App 1, 8; 862 NW2d 681 (2014).

*Constructive Ownership Under Michigan Law.* While there are several definitions of a motor vehicle owner under Michigan law, the one applicable here is someone "having the use" of a vehicle "for a period that is greater than 30 days"—what has been called "constructive" ownership. MCL 500.3101(2)(k)(*i*); *Barnes*, 308 Mich App at 4. This Court has previously determined that "having the use" of a motor vehicle "means using the vehicle in ways that comport with concepts of ownership." *Ardt*, 233 Mich App at 690. The *Ardt* Court noted that "ownership follows from *proprietary* or *possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another." *Id.* at 691.

In *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490; 775 NW2d 151 (2009), the Court evaluated whether an injured driver was an owner of a vehicle. The driver kept the vehicle at her residence and used the vehicle about seven times over a month-long period. *Id.* at 492. The father of the driver's children—who did not use the car—had title to the car and was responsible for maintenance. *Id.* at 491-492. In finding that the trial court did not err in concluding that the driver was not the owner of the vehicle, this Court said that there "was no transfer of a right of use, but simply an agreement to periodically lend." *Id.* at 493. The Court also noted that the driver's use was "sporadic." *Id.*

In contrast, in *Chop v Zielinski*, 244 Mich App 677; 624 NW2d 539 (2001), the injured driver's ex-husband was the title owner of the vehicle when the accident occurred. *Id.* at 681. But the driver had regularly used the car for over six months, parking it at her residence and driving it to and from work daily and using it for personal errands. *Id.* at 680-681. This Court

held that the driver's "use of the car in such a manner was possessory use that comports with the concepts of ownership." *Id*. at 681.

Finally, in *Kessel v Rahn*, 244 Mich App 353; 624 NW2d 220 (2001), the plaintiff claimed she was injured following a motor-vehicle accident. *Id.* at 354. The plaintiff was driving a vehicle that was titled in her mother's name and did not have the requisite insurance. *Id.* This Court was tasked with determining whether the plaintiff was also an owner of the vehicle. *Id.* at 355. The Court noted evidence that the plaintiff had been using the vehicle for over a year on a daily basis, that the plaintiff's mother had not driven the vehicle, and that the vehicle was kept at the plaintiff's home. *Id.* at 357-358. Considering these facts, the Court found that plaintiff "establish[ed] a sufficient proprietary or possessory use of the vehicle for more than thirty days, thus coming within the definition of 'owner' under § 3101." *Id*. at 358.

Taken together, these cases show that, to be a constructive owner, the driver must use the vehicle in a way that an owner would, such as using the vehicle for personal use and driving it on a regular basis. An agreement for periodic use, such as the situation in *Detroit Medical Center*, does not render a driver a constructive owner.

*A Mixed Record*. In this case, the facts developed thus far are mixed on the question of constructive ownership. On the one hand, Johnson's use of the 1999 Ford Taurus could be characterized as incidental. He drove the vehicle only once every couple of weeks just to see whether it was still operating properly, suggesting he did not use it for his own personal use. It also appears that he did not drive the vehicle to and from school or work, as was stated in the insurance declarations—that described his granddaughter's usage, not his own. The record suggests, in fact, that Johnson deferred to plaintiff's use of the vehicle and only drove it when she did not need it for work. Finally, Johnson testified during his deposition that he did not fund the purchase of the vehicle. A reasonable juror could view this evidence as showing that Johnson did not use the 1999 Ford Taurus as an owner typically would.

And yet, on the other hand, there is record evidence that Johnson's usage did have proprietary aspects. First, and what should not be overlooked, Johnson did pay to insure the 1999 Ford Taurus, along with four other vehicles, and the person who regularly drove the vehicle was a family member who lived with him for approximately ten years. Second, the vehicle was kept at Johnson's residence. Third, Johnson had his own set of keys to the vehicle, he maintained and fueled the vehicle at his own expense, and he drove it on occasion to make sure it was still operating properly. This usage could be seen as consistent with someone who owned a small fleet of vehicles, including the one in question, and shared usage of that one vehicle with a family member who lived with him.

Moreover, the import of some of the evidence that would ordinarily weigh against constructive ownership is less clear here. For example, while Johnson was not a frequent driver of the vehicle, this might be understandable and still consistent with ownership, considering that he had four other vehicles from which to choose—similarly, it is entirely possible that there are other vehicles that he undoubtedly owned that he likewise did not regularly drive. In addition, Johnson testified that he did not ask his granddaughter for permission to drive the vehicle, and while he may have deferred to his granddaughter's usage, such deferral makes sense when one considers that she had a specific work schedule and he had four other options if he needed to get

-4-

somewhere when she was working. And, while Johnson may not have contributed money to the purchase of the vehicle, this is not particularly uncommon when one is considering *constructive* ownership, as opposed to *titled* ownership.

As in *Ardt*, 233 Mich App at 691, the record in this case contains evidence that both favors and disfavors a finding of constructive ownership. The record evidence is not so one-sided that a reasonable juror would be compelled to find for or against Johnson-as-owner of the 1999 Ford Taurus. Accordingly, the trial court erred in granting summary disposition to plaintiff. We vacate the trial court's order of summary disposition and remand the case for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Brock A. Swartzle