*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

THEODORE MUTRY,

      Plaintiff-Appellant,

v

MICHIGAN ASSIGNED CLAIMS PLAN and
MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

      Defendants-Appellees.

UNPUBLISHED
May 18, 2023

No. 360843
Wayne Circuit Court
LC No. 21-006809-NF

Before: RICK, P.J., and SHAPIRO and LETICA, JJ.

PER CURIAM.

In this no-fault action, plaintiff, Theodore Mutry, appeals as of right the order granting summary disposition in favor of defendants, Michigan Assigned Claims Plan (MACP) and Michigan Automobile Insurance Placement Facility (MAIPF), under MCR 2.116(C)(10). Plaintiff argues he is entitled to personal protection insurance (PIP) benefits because he sustained bodily injury during a motor vehicle accident in which the vehicle was uninsured. On appeal, plaintiff argues the trial court erred in finding that he was the constructive owner of the uninsured motor vehicle for the requisite timeframe, and therefore, ineligible for PIP benefits. We reverse, finding that there is a question of fact as to whether plaintiff was a constructive owner. However, we affirm dismissal of MACP given caselaw that it lacks the capacity to be sued.

## I. FACTUAL BACKGROUND

The car accident occurred on June 10, 2020. Just eight days earlier, plaintiff accompanied his girlfriend Malisha Lucas (Lucas) to Legend Motors, where a 2015 Chevrolet Cruze was purchased. On the date of the accident, the vehicle was uninsured.

Because the vehicle was uninsured, plaintiff applied for PIP benefits with MACP. In his application he listed only Lucas as the owner of the 2015 Cruze. MACP refused to assign plaintiff's claim to an insurer.

On June 4, 2021, plaintiff filed a complaint against defendants for failing to approve his PIP benefits under MACP of the no-fault insurance act, MCL 500.3101 *et seq*. On August 31, 2021, defendants moved for summary disposition, arguing that plaintiff's answers in his application for PIP benefits established that his use of the vehicle was consistent with constructive ownership, and therefore, he was not entitled to benefits.[1] Specifically, it relied on his answers to some questions on the form, specifically that he used the vehicle daily, had access to a set of keys, put gas in the car, contributed money to its purchase or maintenance and gave himself permission to use the car.

On October 18, 2021, plaintiff responded, asserting it was impossible for him to have constructively owned the vehicle because he must have used it for at least 30 days. Plaintiff attached a CARFAX report that showed the vehicle was sold on June 2, 2020. And plaintiff attached a vehicle registration search listing Lucas as the lone registrant and owner of the car with registration and title dates of June 26, 2020.

On December 1, 2021, plaintiff appeared for his deposition.[2] Plaintiff affirmed that he

- used the vehicle before the accident,
- had access to a set of keys,[3]
- never had to ask permission to use the vehicle,[4]
- had permission from himself to use the vehicle on the date of the accident, and
- the vehicle was not insured.

But, contrary to his application, plaintiff testified that he did not use the vehicle daily; instead, he "drove it a couple times." When confronted with his earlier contrary answer on the application, plaintiff said he had "access to [the vehicle] daily" and, if he did not drive it, it was because he did not venture outside "or something like that." He testified that he did not provide any money toward the purchase of the vehicle but was not asked about whether he contributed to maintenance and he denied ever putting gas in the car. When confronted with his earlier answer that he had put gas in the car, plaintiff testified that he did not remember being asked that question.

---

[1] MCL 500.3101(3)(l)(*i*) defines an "owner" as "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days."

[2] Plaintiff's deposition is not included in the lower court file, but was provided as an appendix to plaintiff's brief.

[3] Plaintiff did not have his own separate keys.

[4] Plaintiff did not need permission from Lucas because the Cruze was there for his use.

Plaintiff further testified that Lucas had another vehicle, but "[s]he just didn't want [that] car anymore, so it was just in the driveway." Plaintiff did not own a car and did not even have a driver's license.[5]

Plaintiff and Lucas never married; however, they lived together for 2½ years with a baby girl and Lucas's young boys, whom plaintiff referred to as his stepsons. Lucas was employed as a caregiver for a family member and plaintiff worked for his stepfather, earning approximately $500 per week. Plaintiff did not disclose this employment on his application; instead, he listed a temporary staffing agency as his employer, and, again, reported earning $500 per week. At his deposition, plaintiff clarified that he had only worked for the agency for two days before COVID interfered. The agency never paid plaintiff for his labor.

Two days after plaintiff's deposition, the court directed defendants' attorneys to appear and address their knowledge, if any, about the vehicle's purchase history because "[t]he statute and case law are clear that the period of alleged constructive ownership must be greater than 30 days, [an] impossibility in this case [where the vehicle was owned for eight days]."

The defense attorneys swiftly responded to the court's order and asked that it be withdrawn. They contended that *Twichel v MIC Gen Ins Corp*, 469 Mich 524; 676 NW2d 616 (2004), established that to be an owner one does not actually have to use the vehicle for 30 days; instead, there must only be an arrangement contemplating his or her use of the vehicle for a period greater than 30 days.

On December 9, 2021, the parties appeared for the hearing via Zoom. Defendants informed the court that plaintiff's deposition had been taken and the transcript was ordered on Friday and provided on the Monday before the hearing. Defendants represented that "in [plaintiff's] deposition [plaintiff] confirmed what he already told us as being accurate and truthful in his application,"[6] which was the basis for defendants' summary disposition motion. More specifically, defendants explained that plaintiff "confirmed" that he and his girlfriend "had the vehicle [for] a week," "that he had access to [the] vehicle daily," and that "he did not have to seek permission [to use it] because that vehicle was there for his use." Defendants added: "And it confirms what [plaintiff] put in his application to us . . . ." Because defendants' summary disposition motion was well-grounded in both fact and law, defendants asked the court to grant it and to withdraw its December 3rd order.

The court noted that counsel had not cited *Twichel* in their earlier pleading, and, instead, relied on *Adams v Curtis*, unpublished per curiam opinion of the Court of Appeals, issued April 11,

---

[5] See MCL 257.904 (prohibiting a person who has never applied for a driver's license from operating "a motor vehicle on a highway or other place open to the public or generally accessible to motor vehicles," as well as prohibiting a person from knowingly permitting a never-licensed driver to operate a motor vehicle owned by them in those places).

[6] Counsel offered to put plaintiff's deposition on share screen if the court desired. The record does not reflect that the court responded or that counsel shared his screen.

2017 (Docket No. 330999).[7] The court said it would review *Twichel* and afford plaintiff the opportunity to respond before it ruled.

In plaintiff's supplemental brief, plaintiff did not contest the facts, but argued that defendants did not proffer evidence to establish that plaintiff's use of the vehicle was part of an arrangement that permitted him to use the vehicle for a period longer than 30 days.

On December 16, 2021, the trial court issued its opinion and order, granting defendants' motion for summary disposition and determining that there was no question of fact on the issue of whether plaintiff was a constructive owner of the vehicle under *Twichel*. In reaching this conclusion, the court determined that "[b]ased upon Plaintiff's application for benefits and Plaintiff's deposition, the following facts are not in dispute:

- Plaintiff used the vehicle before the accident.
- Plaintiff used the vehicle daily.
- Plaintiff had access to a set of keys to the vehicle.
- Plaintiff never had to ask permission to use the vehicle.
- Plaintiff had never been denied permission to use the vehicle.
- Plaintiff put gas in the vehicle.
- Plaintiff paid money toward the purchase or maintenance of the vehicle.
- Plaintiff gave himself permission to use the vehicle.

---

[7] In *Adams*, this Court explained that "a motor vehicle can have a title owner as well as a ' constructive owner.' " *Adams*, unpub op at 1. Constructive "ownership arises from a person's '*proprietary* or *possessory* usage' of the motor vehicle, as opposed to mere 'incidental usage under the direction or with the permission of another.' " *Id*., quoting *Ardt v Titan Ins Co*, 233 Mich App 685, 694; 593 NW2d 215 (1999). The plaintiff was driving a motor vehicle that she had not insured when involved in a collision with a drunk driver. *Id*. The plaintiff sued the defendant and his employer for noneconomic damages under MCL 500.3135. *Id*. A person is barred for recovering any damages under that provision if the person was operating her own vehicle and it was not properly insured. *Id*. at 1-2, citing MCL 500.3135(2)(c). The plaintiff's grandfather insured her vehicle and four others. *Id*. at 2. The policy listed only the grandfather and his wife, and stated that this vehicle was "driven to work or school 3 miles or less by a 71[-]year[-]old operator." *Id*. The plaintiff argued that, although her grandfather was not the titled owner, he was the constructive owner. *Id*. The plaintiff had lived with her grandparents for ten years, her grandfather had helped her purchase the vehicle, he had his own set of keys to the vehicle, and he did not ask for permission to drive the vehicle, driving it when she was not using it for work. He also maintained the vehicle, including washing and fueling it. *Id*. The trial court granted the plaintiff's motion for summary disposition, ruling that the grandfather was a constructive owner. *Id*. at 1. This Court vacated and remanded for further proceedings, concluding that these circumstances created a genuine issue of material fact for a jury. *Id*. at 1, 5. This Court explained that "to be a constructive owner, the driver must use the vehicle in the way an owner would, such as using the vehicle for personal use and driving it on a regular basis." *Id*. at 4. In contrast, "[a]n agreement for periodic use . . . does not render a driver a constructive owner."

- The vehicle was not insured."[8]

In the court's view, those "facts demonstrate, and are unrebutted by Plaintiff, that there is no material question of fact that Plaintiff was the constructive owner of the vehicle and thus not entitled to benefits for the uninsured vehicle." Because the court previously, and erroneously, relied upon plaintiff's argument that the ownership had to be for greater than 30 days in entering its December 3, 2021 order, it reconsidered that order and withdrew it.

Plaintiff filed a motion for reconsideration. Again, plaintiff did not challenge the court's factual findings, but argued that *Twichel* was distinguishable and that "there was no purchase agreement, lease agreement, or other agreement, that by its terms gave the Plaintiff the right to use the subject vehicle for greater than 30 days" in this case.

Defendants responded to plaintiff's motion for reconsideration. Referencing plaintiff's application, defendants argued that the facts identified in the court's opinion were "unrebutted." Defendants asserted that every fact weighed in favor of finding that plaintiff was an owner of the uninsured vehicle and there was no genuine issue of material fact. Furthermore, there was evidence that plaintiff was going to be allowed to use the vehicle for at least thirty days because he "did not have to ask permission to use the vehicle," but "gave himself permission to use the vehicle." On top of that, plaintiff "used [the vehicle] daily," "paid for gas," and "paid for [the] maintenance or the purchase of the vehicle."[9] Indeed, in plaintiff's "own words, he had just as much right to use that vehicle as his girlfriend." Given plaintiff's description of his use of the vehicle, the evidence indicated the couple's agreement had no time limit, and therefore, the burden shifted to plaintiff to offer evidence that their "relationship was anything but indefinite."

The register of actions reflects that the trial court heard and denied plaintiff's motion for reconsideration on March 8, 2022. Plaintiff has not provided us with this transcript.[10] The register of actions also reflects that the court entered an order denying plaintiff's motion for reconsideration two days later. This appeal followed.

---

[8] As already discussed, plaintiff's deposition is not included in the lower court record, but, in contrast to his application for benefits, plaintiff denied using the vehicle daily, denied putting gas in the vehicle, and denied providing money toward the purchase of the vehicle.

[9] See footnote 10.

[10] As appellant, plaintiff had the obligation to file the complete transcript of testimony and other proceedings, MCR 7.210(B)(1)(a). Unless a party has been excused from production of the entire transcript, "a transcript of all proceedings must be supplied, even where it does not appear that a particular transcript of a particular proceeding is directly relevant to the issues on appeal." *Nye v Gable, Nelson & Murphy*, 169 Mich App 411, 416; 425 NW2d 797 (1988). This Court need not consider any issue for which the appellant failed to produce the transcript. *PT Today, Inc v Comm'r of Fin & Ins Servs*, 270 Mich App 110, 151-152; 715 NW2d 398 (2006). This Court, however, may review an issue if the trial court's opinion provides a sufficient basis for it to do so. *Butt v Giammariner*, 173 Mich App 319, 323; 433 NW2d 360 (1988).

## II. STANDARDS OF REVIEW

We review a decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion for summary disposition is granted, under MCR 2.116(C)(10), if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."

> A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil*, 504 Mich at 160 (quotation marks, citations, and emphasis omitted.)]

Further, under MCR 2.116(G)(4), the "party opposing a motion for summary disposition is required to respond with affidavits or other evidentiary materials to show the existence of a factual dispute, rather than relying on the allegations or denials in the pleadings." *McCart v J Walter Thompson USA, Inc*, 437 Mich 109, 115; 469 NW2d 284 (1991). "To the extent [an] analysis requires the interpretation of . . . statutory language, our review is also de novo." *Barshaw v Allegheny Performance Plastics, LLC*, 334 Mich App 741, 747; 965 NW2d 729 (2020).

## III. DISCUSSION

At issue is whether plaintiff was a constructive "owner" of the vehicle as contemplated by the no-fault act. Defendants argue there is no genuine issue of material fact because plaintiff's use of the vehicle indicates he was the constructive owner, making him ineligible for PIP benefits. Plaintiff argues that defendants failed to proffer evidence of a lease or other arrangement that permitted him to use the vehicle for greater than 30 days and asserts he does not meet the statutory definition of an "owner" given the discrepancies between his application answers and deposition testimony.

"[T]he owner or a registrant of a motor vehicle required to be registered in this state must maintain" insurance on their vehicle. MCL 500.3101(1). "A person is not entitled to be paid [PIP] benefits for accidental bodily injury if at the time of the accident" "[t]he person was the owner or registrant of a motor vehicle . . . involved in the accident" and the motor vehicle was uninsured. MCL 500.3113(b). "[U]nder MCL 500.3173, a person who is disqualified from receiving [PIP] benefits is also disqualified from receiving benefits under the assigned claims plan." *Cooper v Jenkins*, 282 Mich App 486, 489 n 1; 766 NW2d 671 (2009).

The no-fault act defines an "owner" to include "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days." MCL 500.3101(3)(l)(*i*). This Court has held that the phrase " 'having the use' of a motor vehicle for purposes of defining 'owner,' . . . means using the vehicle in ways that comport with concepts of ownership." *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999), quoting MCL 500.3101(2)(g)(*i*), the predecessor to MCL 500.3101(3)(l)(*i*). And, because that phrase "appears in tandem with references to renting or leasing," "ownership follows from *proprietary* or

*possessory* usage, as opposed to merely incidental usage under the direction or with the permission of another." *Id*. at 690-691. In other words, while "a regular pattern or supervised usage" may suffice, a "spotty and exceptional pattern of" a person's usage may not. *Id*. at 691.[11]

This Court and our Supreme Court have also considered several other factors in determining whether a person's use of a vehicle is sufficient to establish constructive ownership: (1) whether the purported owner took physical possession of the vehicle pursuant to a purchase, lease, or other agreement, *Twichel*, 469 Mich 531; (2) whether possession of the vehicle was exclusive or shared, *Kessel v Rahn*, 244 Mich App 353, 357-358; 624 NW2d 220 (2001),[12] (3) whether the purported owner's use was permissive, *Detroit Med Ctr v Titan Ins Co*, 284 Mich App 490, 491-492; 775 NW2d 151 (2009),[13] (4) whether the purported owner performed or paid

---

[11] The plaintiff in *Ardt* drove a truck titled to his mother when he was involved in an accident. *Id*. 687. The insurer relied on testimony showing that the plaintiff regularly drove the truck for more than 30 days; however, the plaintiff's mother said the plaintiff drove the truck "only a few times," for minor reasons, such as having it washed. *Id*. at 689. This Court reversed the trial court's order granting summary disposition to the defendant because the conflicting testimony created a question of fact. *Id*. at 691.

[12] In *Kessel*, the plaintiff had been driving an uninsured car titled in her mother's name for over a year when she suffered bodily injury and sued the defendant for noneconomic loss. *Kessel*, 244 Mich App at 357. The trial court looked to then MCL 500.3101(2)(g) to interpret the term "own vehicle" in MCL 500.3135(2)(c), which precluded damages from being awarded to "a party who was operating . . . her own vehicle at the time the injury occurred and did not have" insurance. The underlying facts were: (1) the plaintiff's mother had not driven the car while it was in the plaintiff's possession, (2) the plaintiff had exclusive use of the vehicle for any use she needed, (3) the plaintiff's mother confirmed that she purchased the vehicle with the intent that the plaintiff use it, (4) the car was kept at the plaintiff's separate home, and (5) the plaintiff's mother averred that the plaintiff was obligated to pay for gas, repairs, and insurance on the vehicle. *Id*. Because the plaintiff had "a regular pattern of unsupervised usage," in excess of 30 days, this Court concluded that the trial court properly granted summary disposition in favor of the defendant when it determined that the plaintiff was precluded from recovery because she was operating her own vehicle and failed to insure it. *Id*. (quotation marks and citation omitted).

[13] In *Detroit Medical Center*, the plaintiff provided medical services to Maria Jimenez following a car accident and sued to recover its expenses. *Detroit Med Ctr*, 284 Mich App at 491. The defendant, who was assigned Jimenez's claim, argued that Jimenez's expenses were not recoverable because she was an owner and driver of an uninsured vehicle. *Id*. Although the vehicle was kept at Jimenez's home, Jose Gonzalez, the father of Jimenez's two children, had title to the vehicle and cancelled the insurance. Gonzalez may have lived with Jimenez, and she used the vehicle, primarily for grocery shopping, about seven times a month. *Id*. at 491-492. Jimenez needed permission from Gonzalez to use the car and the keys, but he had never denied her permission. *Id*. at 492. Jimenez put gas in the car, but Gonzalez maintained it. And, because Gonzalez had another car, he stopped using the one Jimenez drove. *Id*. In light of Jimenez's lack of keys and permissive use, the trial court determined that a finding of a right of ownership was precluded and granted summary disposition to the plaintiff. *Id*. This Court affirmed. *Id*. at 491,

for maintenance on the vehicle and paid to fuel it, *Detroit Med Ctr*, 284 Mich App at 492; *Kessel*, 244 Mich App at 357-358; (5) where the vehicle was regularly parked, *Detroit Med Ctr*, 284 Mich App at 492; *Chop v Zielinski*, 244 Mich App 677, 681; 624 NW2d 539 (2001);[14] *Kessel*, 244 Mich App at 357; and (6) whether the purported owner thought that she had a legal right to the vehicle. *Chop*, 244 Mich App at 681-682.

In *Twichel*, our Supreme Court addressed whether the plaintiff's decedent was an owner of the vehicle involved in a fatal accident. *Twichel*, 469 Mich App at 526. The plaintiff's decedent had purchased the truck from a friend five days before the accident, paying one-half of the agreed-upon sales price with the remainder to paid later. The friend did not sign over the title to the plaintiff's decedent because he had not received payment in full. The vehicle was not insured. *Id*. The decedent lived with his grandfather, who had a policy issued by the defendant to cover the grandfather's vehicles. *Id*. at 527. The decedent's personal representative sued the grandfather's insurance company for PIP benefits. *Id*. The circuit court ruled that the decedent was covered by the policy. *Id*. This Court affirmed because the decedent did not actually use the vehicle for 30 days, relying on *Ardt* and *Chop*. *Id*. at 527, 529. Our Supreme Court reversed. *Id*. at 526. It explained that "the focus must be on the nature of the person's right to use the vehicle." *Id*. at 530. The Court rejected the plaintiff's reading of the statutory language, observing that the statute did not say "having *used* the vehicle" for 30 days, but " 'renting a motor vehicle or *having use thereof* . . . for a period that is greater than 30 days." *Id*. at 530. Consequently, "if the lease or other arrangement under which the person has use of the vehicle is such that the right of use will extend beyond thirty days, that person is the 'owner' from the inception of the arrangement, regardless of whether a thirty-day period has expired." *Id*. Because the arrangement in *Twichel* "was for a permanent transfer of ownership of the vehicle," "it contemplated that the deceased

---

494. This Court noted that Jimenez did not have use of the car for longer than 30 days and that Jimenez's use was not regular, but sporadic. *Id*. at 493. Although Jimenez's relationship with Gonzalez was such that permission to use the vehicle was never denied, Jimenez did not believe that she had ownership or unfettered use as evidenced by her need to ask for permission and obtain the keys. *Id*. at 493-494.

[14] In *Chop*, the plaintiff was driving a car registered to her ex-husband that was not insured when she injured her wrist in an accident. *Chop*, 244 Mich App at 678. The trial court granted the defendant's motion for summary disposition because the plaintiff was precluded from seeking noneconomic damages under MCL 500.3135(2)(c). *Chop*, 244 Mich App at 678. This Court agreed, noting that the plaintiff regularly used the car, which was kept at her apartment complex from late April 1997 to mid-September 1997, for her work daily and to run other personal errands. *Id*. at 680-681. That timeframe clearly exceeded 30 days. *Id*. at 682. And although the plaintiff was not awarded legal title of the vehicle under the judgment of divorce, this fact was not dispositive on the question of ownership because there could be multiple owners of a car for purposes of the no-fault act. *Id*. at 681. Because there was no indication that the plaintiff asked her ex-husband's permission or used the car under his direction, her use of the car was possessory and comported with the concepts of ownership. *Id*. Moreover, the plaintiff's contention that she merely borrowed the car rang hollow given her testimony that she was awarded the car in the divorce judgment, even though her belief was mistaken. *Id*.

would have exclusive use of the truck permanently." *Id*. at 531. "[T]hat the accident occurred before the expiration of thirty days [did] not affect the nature of the deceased's interest in the vehicle." *Id*. Stated otherwise, "[i]t is the nature of the right to use the vehicle—whether it is contemplated that the right to use the vehicle will remain in effect for more than thirty days—that is controlling, not the actual length of time that has elapsed." *Id*. at 532.

Additionally, this Court has held that "[t]he phrase 'or otherwise' [in the statutory definition of the term "owner"] plainly indicates that the Legislature intended [the term "owner"] to apply in situations other than those involving leases or rentals." *Chop*, 244 Mich App at 682. See also *Kessel*, 244 Mich App at 360 (The use of the phrase "or having the use thereof" is not limited to commercial settings.). Indeed, the statute's legislative history reveals an intention to impose insurance obligations on "drivers that have complete custody of and control over the vehicles . . . ." *Id*. at 360 (quotation marks and citation omitted).

In this case, the trial court's determination that the facts were unrebutted based on plaintiff's deposition and application was incorrect in part. Plaintiff's application was contradicted on three points—plaintiff denied that he contributed money toward the purchase of the vehicle,[15] that he used the vehicle daily, and that he purchased gasoline for the vehicle. Plaintiff did not contradict his application on five points—plaintiff used the vehicle, not daily as initially reported, but a couple of times over the course of the eight days; plaintiff had access to a set of keys, but later testified that he did not have his own set of keys; plaintiff had not ever had to ask for permission to use the vehicle; plaintiff had never been denied permission to use the vehicle; and plaintiff gave himself permission to use the vehicle on the date of the accident.

Even so, plaintiff identified Lucas as the lone owner of the vehicle on his application and, during his deposition, plaintiff denied that he owned a car. Plaintiff also explained that the car was there for him to drive if he "needed to, like if [he] need[ed] to do something . . . ." Thus, although plaintiff had access to the car's keys, he did not have unfettered use of the vehicle as an owner would. Cf. *Chop*, 244 Mich App at 680-681 (the plaintiff regularly used the car, kept at her apartment complex, for work and to run other personal errands); *Kessel*, 244 Mich App at 257 (the plaintiff had exclusive use of the vehicle for any use she needed). In fact, plaintiff used the vehicle sporadically, albeit apparently without securing Lucas's permission given their relationship. *Detroit Med Ctr*, 284 Mich App at 493 (the injured driver used the vehicle sporadically and did not believe she owned the vehicle, even though her relationship with the car's owner was such that permission to use the vehicle was never denied); *Ardt*, 233 Mich App 689 (the plaintiff had

---

[15] Because the application inquiry was written in the alternative—"pay money toward the purchase or the maintenance of the vehicle"—defendants suggest that there was no inconsistency because plaintiff only denied contributing money to the purchase of the vehicle, leaving unchallenged the option that plaintiff had contributed money to the maintenance of the vehicle. Plaintiff, however, was not specifically asked about the latter option during his deposition. And the CARFAX report does not reflect paid-for maintenance being performed during the relevant timeframe. To the contrary, plaintiff testified that he had access to this used vehicle daily, never put gas in it, and used it a couple of times, presumably without issue.

sporadic use of the vehicle). Viewing this evidence in the light most favorable to the non-moving party, we conclude that a question of fact exists on the question of whether plaintiff was a constructive owner of the motor vehicle involved in the accident. *Twichel*, 469 Mich at 530 ("the focus must be on the nature of the person's right to use the vehicle"); *Ardt*, 233 Mich App at 690 (quotation marks and citation omitted) ("having the use of a motor vehicle for purposes of defining an owner, . . . means using the vehicle in ways that comport with concepts of ownership."). [16]

Defendants are correct, however, that this Court has held that MACP is not a separate entity from MAIPF, and therefore, lacks the capacity to be used. See *Mich Head & Spine Institute, PC v Mich Assigned Claims Plan*, 331 Mich App 262, 265 n 1; 951 NW2d 732 (2019). We are bound to follow that decision, MCR 7.215(J)(1), and we do not reverse where the trial court reaches the right result albeit for the wrong reason. *Gleason v Mich Dep't of Transp*, 356 Mich App 1, 3; 662 NW2d 822 (2003).

Affirmed in part; reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Anica Letica

---

[16] We decline to address defendants' argument that affirmance is warranted on a different ground, namely, that plaintiff committed a fraudulent insurance act under MCL 500.3173a(4) in filling out the application given his subsequent deposition testimony.